LAURA E. DUFFY
United States Attorney
MARK W. PLETCHER
Assistant U.S. Attorney
Colorado Bar No.: 34615
ROBERT S. HUIE
Assistant U.S. Attorney
California Bar No.: 237374
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9714
Email: mark.pletcher@usdoj.gov

WILLIAM J. STELLMACH
Acting Chief, Fraud Section
CATHERINE VOTAW
Trial Attorney, Fraud Section
DC Bar No.: 1012563
BRIAN YOUNG
Trial Attorney, Fraud Section
Criminal Division
Ohio Bar No.: 0078395
Tel: (202) 353-0449
Email: Cathy.Votaw2@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 13cr3781-JLS (13cr4287-JLS) <br> 13cr3782-JLS <br> **INFORMATION** <br> Title 18, U.S.C., Sec. 371 – Conspiracy To Commit Bribery |
| v. | |
| LEONARD GLENN FRANCIS (1) and GLENN DEFENSE MARINE (ASIA) PTE. LTD. (2), | Title 18, U.S.C., Secs. 201(b)(1)(A) and (C) – Bribery |
| Defendants. | Title 18, U.S.C., Sec. 371 – Conspiracy To Defraud the United States |

FILED JAN 15 2015

The United States charges that, at all times relevant to this Information:

1. Defendant LEONARD GLENN FRANCIS was a citizen of Malaysia, residing in Singapore. FRANCIS was the Group Executive Chairman and President of GLENN DEFENSE MARINE (ASIA) PTE. LTD. ("GDMA")

2. Defendant GDMA was a corporation organized under the laws of Singapore, which provided "husbanding" services under contracts with the U.S. Navy to support the Navy's operations in the Pacific Ocean. Husbanding involved the coordinating, scheduling, and direct and indirect procurement of items and services required by ships and submarines when they arrive at port.

3. Michael Vannak Khem Misiewicz and Jose Luis Sanchez were officers in the U.S. Navy and "public officials" as defined in 18 U.S.C. § 201(a). It was a violation of their official and lawful duties (a) to transmit information that the U.S. Navy had classified as "Confidential" to any person not entitled to receive it; (b) to make unauthorized disclosure of proprietary, internal U.S. Navy information; and (c) to enrich themselves by using their position and influence within the U.S. Navy to promote the interests of a husbanding contractor.

4. John Bertrand Beliveau, Jr., was a Special Agent with the Naval Criminal Investigative Service ("NCIS") and a "public official" as defined in 18 U.S.C. § 201(a). NCIS had conducted several criminal investigations into the activities of FRANCIS and GDMA. Investigative reports concerning those investigations were

*Information*

stored in an internal NCIS database called the NCIS Knowledge Network ("K-NET"). These investigative reports were law enforcement sensitive materials, and as a Special Agent, Beliveau had access to them although he had not been assigned to any investigation of FRANCIS or GDMA. It was a violation of Beliveau's official and lawful duties (a) to disseminate K-NET reports without authorization, or to anyone without a need to know that information, and (b) to provide advice and counsel to the subject of an ongoing NCIS investigation.

5. In or about Summer 2011, the U.S. Navy awarded GDMA three regional contracts to provide husbanding services to U.S. ships and submarines at ports throughout Southeast Asia (Region 2), Australia and the Pacific Isles (Region 3), and East Asia (Region 4).

6. The Region 2 contract contained the following main provisions for pricing different ship husbanding services:

a. Fixed price items. For each port, GDMA and the U.S. Navy agreed to fixed prices for various specified services.

b. Incidentals. The Region 2 contract also provided for "Incidentals," or items that were not enumerated as fixed price items. For these items, GDMA was required to obtain at least two competitive quotes for the service, and provide these quotes to the U.S. Navy through a computer-based Online Pricing Application ("OPA"), hosted by GDMA. GDMA was allowed to submit its own quote as one of

*Information*

the competitive market quotes, but it was required to disclose any profit or markup. The U.S. Navy would then choose which vendor to use for each Incidental service.

      c. Fuel. Among the Incidentals was the provision of Fuel, which was handled slightly differently. Under the Region 2 contract, if GDMA arranged for fuel delivery, it was required to bill the U.S. Navy for its actual costs, without markup.

      d. Port Tariff Items. "Port Tariff Items" are ship husbanding services provided by an established Port Authority and charged at published "Port Tariff Rates." For these items, GDMA was required to bill the U.S. Navy for actual costs paid to the Port Authority, without markup.

      7. These offenses were begun and committed on the high seas or otherwise out of the jurisdiction of any particular district, and thus, venue is proper for this offense in the Southern District of California, as the district in which one or more joint offenders, namely Leonard Glenn Francis was arrested.

## Count 1 – Conspiracy to Commit Bribery

### The Conspiracy

      8. The allegations in Paragraphs 1 through 7 of this Superseding Information are hereby re-alleged and incorporated herein by reference.

      9. Beginning in or about 2004, and continuing until in or about September 2013, on the high seas and outside the jurisdiction of any particular district, FRANCIS, GDMA, GDMA employees, and others (1) knowingly and unlawfully combined, conspired, and agreed with U.S. Navy officers and employees, who were

*Information*

public officials, to commit bribery, that is, FRANCIS, GDMA, GDMA employees, these public officials, and others knowingly agreed that, in return for these U.S. Navy officers and employees being influenced in the performance of official acts and being induced to do and omit to do acts in violation of their official and lawful duties, including providing to FRANCIS and GDMA classified and other proprietary, internal U.S. Navy information and using their positions and influence within the U.S. Navy to benefit FRANCIS and GDMA, (a) FRANCIS, GDMA, and GDMA employees would, directly and indirectly, corruptly give, offer, and promise things of value to the U.S. Navy officers and employees; and (b) the U.S. Navy officers and employees would directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept these things of value, all in violation of Title 18, United States Code, Sections 201(b)(1)(A) and (C), and 201(b)(2)(A) and (C); and (2) FRANCIS, GDMA, and their co-conspirators took overt acts in furtherance of this conspiracy and to effect its unlawful objects, all in violation of Title 18, United States Code, Section 371.

## OBJECT OF THE CONSPRIACY

10. It was the object of the conspiracy for FRANCIS and GDMA to offer and give things of value to or on behalf of Misiewicz, Sanchez, Beliveau, and other U.S. Navy officers and employees (collectively, "the public officials"), including cash, gifts, travel expenses, entertainment expenses, and the services of prostitutes, in return for the public officials providing classified and other proprietary, internal U.S. Navy and/or law enforcement information to FRANCIS and GDMA, and using their

*Information*

position and influence within the U.S. Navy to advocate for and advance the interests of FRANCIS and GDMA, all as opportunities arose.

## METHODS AND MEANS OF THE CONSPIRACY

11. In furtherance of this conspiracy, and to accomplish its object, the following methods and means were used, among others:

a. FRANCIS and GDMA would offer and give things of value to or on behalf of the public officials, including cash, gifts, travel expenses, entertainment, and the services of prostitutes.

b. The public officials would demand, seek, receive, and accept things of value from FRANCIS and GMDA.

c. In return for these things of value, the public officials provided FRANCIS and GDMA with classified and other proprietary, internal U.S. Navy information, and used their positions and influence within the U.S. Navy to advocate for and advance the interests of FRANCIS and GDMA, all as opportunities arose.

d. In return for these things of value, Beliveau provided FRANCIS and GDMA with law enforcement sensitive information, including K-NET reports, and advice and counsel about ongoing NCIS criminal investigations into the activities of FRANCIS and GDMA.

e. FRANCIS and the public officials would take steps to avoid detection of their corrupt relationships and to obstruct investigations into their activities.

*Information*

## OVERT ACTS

12. In furtherance of the conspiracy and to effect is object, the following overt acts, among others, were committed:

    a. On or about March 4, 2011, FRANCIS paid for Beliveau to travel to Bangkok, stay two nights in a luxury hotel, and receive the services of a prostitute.

    b. On or about June 22, 2011, Sanchez provided FRANCIS with classified U.S. Navy ship schedules.

    c. On or about July 23, 2011, FRANCIS paid for Sanchez to stay at a luxury hotel in Singapore and Jakarta, Indonesia.

    d. In or about December 2011, Beliveau searched the K-NET database for reports related to ongoing criminal investigations into FRANCIS and GDMA in order to provide those reports to FRANCIS.

    e. On or about December 31, 2011, Misiewicz provided FRANCIS with a classified U.S. Navy ship schedule.

    f. On or about July 2, 2012, FRANCIS paid for Misiewicz and three family members to travel from Japan to Cambodia, Singapore, and Malaysia.

All in violation of Title 18, United States Code, Section 371.

## Count 2 – Bribery

13. The allegations in Paragraphs 1 through 7 of this Superseding Information are hereby re-alleged and incorporated herein by reference.

14. Beginning in or about January 2011, and continuing until in or about September 2013, on the high seas and outside the jurisdiction of any particular district, FRANCIS and GDMA knowingly engaged in a course of conduct whereby they directly and indirectly, corruptly gave, offered, and promised things of value, including cash, travel and entertainment expenses, and prostitutes to NCIS Supervisory Special Agent John Bertrand Beliveau, Jr., a public official, with the intent to influence Beliveau in the performance of official acts, as opportunities arose, and with the intent to induce Beliveau to do and omit to do acts in violation of his lawful duties, as opportunities arose, including providing to FRANCIS and GDMA law enforcement sensitive information and advice and counsel about ongoing NCIS criminal investigations into the activities of FRANCIS and GDMA, all in violation of Title 18, United States Code, Section 201(b)(1)(A) and (C).

## Count 3 – Conspiracy To Defraud the United States

15. The allegations in Paragraphs 1 through 7 of this Superseding Information are hereby re-alleged and incorporated herein by reference.

16. Beginning in or about July 2009, and continuing to in or about September 2013, on the high seas and outside the jurisdiction of any particular district, FRANCIS and GDMA knowingly and intentionally combined, conspired, and agreed with GDMA employees and others to defraud the United States, that is, FRANCIS and GDMA knowingly and intentionally agreed with GDMA employees and others to defraud the United States by obstructing the

*Information*

lawful functions of the U.S. Navy through deceitful and dishonest means, namely, by submitting fraudulently inflated claims for payment to the U.S. Navy, and false and fraudulent documentation in support of those claims for payment; and FRANCIS, GDMA and their co-conspirators took overt acts in furtherance of this conspiracy and to effect its unlawful objects, all in violation of Title 18, United States Code, Section 371.

## OBJECT OF THE CONSPIRACY

17. It was the object of the conspiracy for FRANCIS, GDMA, GDMA employees, and others to overcharge the U.S. Navy by submitting fraudulent claims for payment, including for Incidentals, Fuel, and Port Tariff Items on the Region 2, Region 3, and Region 4 contracts.

## METHODS AND MEANS OF THE CONSPIRACY

18. In furtherance of this conspiracy, and to accomplish its objects, the following methods and means were used, among others:

   a. FRANCIS and others would submit and cause to be submitted to the U.S. Navy fraudulent quotes for Incidentals, purporting to be from prospective subcontractors.

   b. FRANCIS, GDMA, GDMA employees, and others would submit and cause to be submitted to the U.S. Navy fraudulent representations related to the acquisition of fuel, purporting to be from prospective subcontractors, including

*Information*

fraudulent representations about the unavailability in certain countries of the type of fuel required by U.S. Navy vessels, as well as fraudulent representations about the source and actual cost of the fuel provided by GDMA to the U.S. Navy vessels.

    c. FRANCIS, GDMA, GDMA employees, and others would submit and cause to be submitted to the U.S. Navy fraudulent invoices for Port Tariff Items, purporting to be from bona fide Port Authorities or purporting to be true statements from bona fide Port Authorities.

    d. FRANCIS, GDMA, GDMA employees, and others would submit and cause to be submitted to the U.S. Navy false, fictitious, and fraudulent claims for the purpose of obtaining the payment for ship husbanding services rendered to U.S. Navy vessels during port visits, which claims included, depending on the port visited and U.S. Navy vessel, materially fraudulent representations related to Incidentals, Fuel, and Port Tariff Items.

## OVERT ACTS

19. In furtherance of the conspiracy and to effect is object, the following overt acts, among others, were committed:

    a. On or about October 6, 2011, GDMA submitted to the U.S. Navy a fraudulent claim in the amount of approximately $108,776.43 in connection with services rendered to the USS Defender.

b. On or about October 26, 2012, GDMA submitted to the U.S. Navy a fraudulent claim in the amount of approximately $1,232,858.07 in connection with services rendered to the USS Bonhomme Richard.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

20. The allegations set forth in Paragraphs 1 through 19 of this Information are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c).

21. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the above-named defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c), including but not limited to all property, real or personal, which sum represents a portion of the gross of proceeds of a conspiracy to commit bribery and bribery as well as a conspiracy to defraud the

//
//
//
//
//

*Information*

United States, and substitute assets therefor, with the Court to determine the full amount at sentencing, as alleged in this Information.

DATED: January 15, 2015.

                LAURA E. DUFFY
                United States Attorney

By: *[signature]*
                MARK W. PLETCHER
                ROBERT S. HUIE
                Assistant U.S. Attorneys

                WILLIAM J. STELLMACH
                Acting Chief, Fraud Section
                Criminal Division

By: *Catherine Votaw /RSH*
                CATHERINE VOTAW
                BRIAN YOUNG
                Trial Attorneys
                Fraud Section
                U.S. Department of Justice